UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 10-190-GWU


ZARA ELAINE EVANS,                                        PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.     Is the claimant currently engaged in substantial gainful activity?
       If so, the claimant is not disabled and the claim is denied.

2.     If the claimant is not currently engaged in substantial gainful
       activity, does he have any "severe" impairment or combination
       of impairments--i.e., any impairments significantly limiting his
       physical or mental ability to do basic work activities?  If not, a
       finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine
       whether the claimant's severe impairment(s) or combination of
       impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."

Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework

for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient,

if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial

evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Zara Elaine Evans, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of migraine headaches and degenerative disc disease of the lumbar spine.  (Tr. 25).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that there were a significant number of jobs existing in the national economy which the plaintiff could perform, and therefore she was not entitled to benefits.  (Tr. 28-32).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 45, high school education, and work experience as a medical taxi driver could perform any jobs if she were capable of "light" level exertion, and would be limited to occasional climbing, balancing, stooping, crouching, kneeling, and crawling.  (Tr. 62).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 63).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.  Although there are some troubling aspects to

the ALJ's decision, the court finds that substantial evidence does support his ultimate conclusion.

The plaintiff alleged disability beginning June 5, 2006 due to migraine headaches, depression, chronic back pain, anxiety, and insomnia.  (Tr. 137). Although the ALJ found medically determinable impairments of diabetes mellitus and dysthymia, he determined that they were controlled by medication, did not limit the plaintiff's activities of daily living to a significant degree and that she was non-compliant with treatment.  (Tr. 26).  These conclusions are reasonable in light of the plaintiff's testimony that she had voluntarily stopped attending mental health counseling because it made her nervous (Tr. 46), the fact that the last treatment note from the mental health counselor indicated that the plaintiff was more focused on her back pain and obtaining disability income than on her mental health (Tr. 325), a consultative psychological examination by Psychologist Robert J. Fitz indicating that, despite the plaintiff's dysthymic disorder, she had a Global Assessment of Functioning (GAF) score of 65 (Tr. 282-3), consistent with no more than mild symptoms according to the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34, and, finally, because state agency reviewing psychologists opined that she did not have a "severe" mental impairment (Tr. 286, 330).  Regarding diabetes, the plaintiff testified that she was taking an oral medication, Actos, and trying to control the condition with diet (Tr. 45) and medical

records show that her blood glucose level was in the normal range in January, 2006 (Tr. 264).  By March, 2007, records from a cardiologist indicate that she had been diagnosed with Type II diabetes mellitus and was taking Actos (Tr. 353).  However, there is no indication of any specific limitations related to this condition.

Regarding migraine headaches, while the ALJ found these to be a "severe" impairment, medical records show that the plaintiff's prescription for Imitrex controlled her condition "extremely well."  (Tr. 259).

The plaintiff asserts that the ALJ committed error by rejecting a residual functional capacity assessment completed by a treating source, Dr. Eiyad Alchureiqi, from March, 2008.  This report limits the plaintiff to lifting or carrying less than 5 pounds, sitting less than 2 hours per day, with unspecified limitations on reaching, pushing, and pulling, and limits the plaintiff to no climbing, balancing, stooping, crouching, kneeling, and crawling.  (Tr. 374).  As grounds for the restrictions, the physician cited chronic low back pain due to a herniated disc, diabetes mellitus, hypertension, hyperlipidemia, obesity, and anxiety and depression.  (Id.).  The ALJ stated in his decision that the assessment had an illegible signature and did not provide any objective evidence for the total postural restrictions and the sitting restriction.  Therefore, he rejected it as being inconsistent with the reports of other sources, including an emergency room record from the Kentucky River Medical Center from April 12, 2006 indicating that the plaintiff

9

obtained complete relief of a migraine headache with a pain shot (Tr. 233), and with a report of an MRI scan showing a small disc protrusion and mild encroachment in the lumbar spine (Tr. 252).   The ALJ apparently also placed reliance on a consultative examination by Dr. Rita Ratliff which showed few abnormalities.  Dr. Ratliff reported that the plaintiff "resisted" performing range of motion testing of the hips and the examination of her neck and lateral flexion were felt to be "suboptimal." (Tr. 275).  The plaintiff also refused to attempt to squat, but had no difficulty getting on and off the examination table, had negative straight leg raising, and walked on her heels and toes without difficulty.  Dr. Ratliff concluded that the examination as a whole was "suboptimal," and that she could not comment on any restrictions. (Id.).

The plaintiff correctly points out that the functional capacity assessment completed by Dr. Alchureiqi did have the physician's name printed next to the illegible signature (Tr. 374) and that the ALJ had queried the plaintiff and her attorney at the administrative hearing and had been informed of the identity of the physician (Tr. 35).  In addition, the plaintiff notes that Dr. Alchureiqi's office notes do document degenerative changes of the lumbar spine by MRI scanning, as noted in the functional capacity assessment.  (Tr. 252).  Moreover, he suggests that Dr. Ratliff's report was unreliable considering that she cited invalid test results and could not comment on any restrictions.

Generally, the opinion of a treating physician must be given controlling weight under the Commissioner's regulations, as long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.   20 C.F.R. § 416.927(d)(2).  In the present case, the ALJ, whatever his confusion regarding the source of the restrictions, was saying that they were not supported by objective evidence.   While the plaintiff did have an abnormal MRI, it is difficult for a lay reviewer to determine whether the abnormalities were of a degree which would support the lifting and postural restrictions listed in Dr. Alchureiqi's functional capacity assessment.  However, it is a fact that Dr. Alchureiqi's contemporaneous office notes from 2006 repeatedly tell the plaintiff to "avoid" bending and not to lift "heavy stuff."  (Tr. 252, 254, 311, 315).  While the physician did not specify what he meant by "heavy," a reasonable finder of fact could conclude that this statement was inconsistent with a restriction to lifting no more than 5 pounds.  In addition, as the ALJ stated, there is no apparent basis for a restriction to no more than 2 hours of sitting in an 8 hour day.  Regarding Dr. Ratliff's report, it is evident that, in her opinion, the plaintiff was not cooperating with the examination, and as such, it was not unreasonable for the ALJ to draw a negative inference from this report.  State agency sources who reviewed some of the evidence, including Dr. Alchureiqi's office notes and Dr. Ratliff's report, concluded that the plaintiff should be capable

of at least light level exertion and occasional postural activities, consistent with the ALJ's hypothetical question.  (Tr. 301-7, 345-51).  Even though they did not have the benefit of reviewing and commenting on Dr. Alchureiqi's functional capacity assessment, their reports do serve to bolster the ALJ's conclusion that the restrictions he gave in 2008 were inconsistent with the recorded objective findings.  In sum, the ALJ could reasonably have concluded that the extreme limitations listed by Dr. Alchureiqi in 2008 were inconsistent with other evidence and not well-supported by objective findings.

The plaintiff takes great exception to a statement by the ALJ that the disabling RFC is unique in the plaintiff's medical records because "no other physician, either treating, reviewing, or consulting, has found her disabled and she has been applying for supplemental security income since 1993.  This fact is entitled to great weight." (Tr. 30).  The plaintiff notes that there is no evidence in the record of any previous applications or denial decisions and that citing them was an "overwhelming legal error sufficient to vacate" the current decision.  The only other reference to a prior decision is contained in the ALJ's opening statement at the administrative hearing which indicates that there was an original application filed on April 22, 1993 which was denied in an ALJ decision dated July 24, 1995.  (Tr. 35).  The plaintiff maintains that even if the ALJ's statements are true, the ALJ was required to comply with the holding in <u>Drummond v. Commissioner of Social</u>

12

Security, 126 F.3d 837, 842 (6th Cir. 1997).  Drummond, and the Commissioner's Acquiescence Ruling 98-4(6), require an ALJ to adopt the residual functional capacity finding from a final decision by an ALJ on a prior claim unless there is new and material evidence reflecting a change in condition.  As previously noted, however, the plaintiff's current onset date was alleged to be 2006, and she reported working full-time for almost three years from 1998 to 2000 in a job requiring frequent lifting of more than 50 pounds and occasional lifting of more than 100 pounds.  (Tr. 39-40, 138).  This certainly reflects a change in condition from a prior allegation of disability.  Since she was performing a job at the heaviest level of exertion, it appears exceedingly unlikely that the 1995 ALJ decision could have contained any restrictions that were relevant to her subsequent application.

While it is troubling that the ALJ would reportedly place "great weight" on a lack of source restrictions "since 1993," implying that he had access to evidence which is not included as part of the current record, the court concludes that under the circumstances of this case the error was harmless in view of the findings and statements contained in the more recent medical records described above. Remanding the case in an attempt to locate these prior medical records simply to confirm that they did not contain any statements of disability would be a waste of judicial and administrative resources; after all, it would not alter the minimal

evidence supporting greater restrictions submitted in connection with the present application.

Finally, the plaintiff submitted additional evidence to the Appeals Council from February, 2010 indicating that her diabetes mellitus had become uncontrolled and that she had experienced a possible stroke.  (Tr. 376-83).  She also submitted a fully favorable ALJ decision from October 26, 2010 awarding benefits with an onset date of June 24, 2008, one day after the ALJ decision in the present case. However, the new evidence clearly concerns a deterioration of her condition and is not relevant to the time period at issue here.  Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 685 (6th Cir. 1992).

The decision will be affirmed.

This the 16th day of February, 2011.

Signed By:

*G. Wix Unthank*

United States Senior Judge